STATE OF MICHIGAN
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN


H & J SOLUTIONS, LLC
And those similarly situated

                                    Plaintiffs,

v.

CITY OF EASTPOINTE

                                    Defendant.          File No:

                                                        Hon.
_____/

Law Offices of Aaron D. Cox, PLLC
Aaron D. Cox (P69346)
Attorney for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664
aaron@aaroncoxlaw.com

Mark K. Wasvary, PC
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667
markwasvary@hotmail.com
_____/

## CLASS-ACTION COMPLAINT

NOW COMES H & J SOLUTIONS, LLC (H&J), on behalf of all others

similarly situated, by and through the undersigned attorneys from THE LAW

OFFICES OF AARON D. COX, PLLC and MARK K. WASVARY, PC, and

states for this Complaint as follows:

## **INTRODUCTION**

1. Plaintiff challenges the City of Eastpointe's (the "City") policy, practice, and custom of imposing legal fees not specifically authorized under law to Plaintiffs who own real property in the City.

2. The City, like many municipalities in Southeastern Michigan was hit hard during the recession and accompanying real-estate declines that took place from 2006-2014. During that time period the City saw a dramatic increase in the number of single-family homes that were purchased by real-estate investors for rental purposes.

3. The City has struggled with ensuring compliance of these rental properties with the City's codes and ordinances ever since and has taken increasingly draconian and aggressive means by which to attempt to bully rental property owners either into giving up renting property in the City or into doing things to their rental properties that are not specifically authorized by law.

4. One such mechanism used by the City is to deem any structure that is not in compliance with the local building code a "Dangerous Building" and to commence a dangerous building procedure that threatens to demolish the building. Such proceedings are commenced by the City for even the most

minor issues of non-compliance without regard to actual issues that would threaten the health and safety of the community at large.

5. No matter the outcome of the City's Dangerous Building Hearings (the "Hearing") – be it compliance or destruction of the building itself – the City proceeds to assess to the owner of the building not just the costs of the abatement and/or demolition necessary to make the building safe (if any), but also the legal fees, court-reporter fees, and administrative fees alleged to have been incurred throughout the Hearing process.

6. The State of Michigan under the Home Rule City Act (MCL 117.1 et seq.) permits municipal corporations like Eastpointe to adopt certain laws, codes, or rules for building regulations.

7. MCL 117.3 (K) specifically addresses the adoption of certain building codes:

> Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or other agency of this state, or by an organization or association

that is organized and conducted for the purpose of developing the code, by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full. The law, code, or rule shall be clearly identified in the ordinance and its purpose shall be published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. The publication shall contain a notice stating that a complete copy of the law, code, or rule is made available to the public at the office of the city clerk in compliance with state law requiring that records of public bodies be made available to the general public.

8. Pursuant to the Home Rule City Act the City has adopted the International Property Maintenance Code ("IPMC") in Section 10-79 of the City's codes and ordinances. The IPMC, in turn, governs the maintenance of existing structures in the City.

9. One section of the IPMC that the City amended relates to the City's handling of dangerous buildings. Of specific importance to this lawsuit is §10-82 modifying IPMC 111.8, which reads as follows:

The owner shall be personally liable for all costs of abatement and the cost to demolish the building or to make it safe and said costs shall also be a lien against the real property which shall be reported to the finance director who shall assess the costs against the property on which the building or structure is located. A proceeding may also be filed by the city in a court of competent jurisdiction against any individual who owns or previously owned the property, at the time the costs were incurred, to collect all costs of abatement and the cost to demolish the building or to make it safe.

(the "Costs Ordinance")

10. It is under this Costs Ordinance that the City charges to owners not just the costs of abatement and demolition, but legal fees incurred, fees for court reporters, administrative fees, and a 5% penalty for untimely payment (collectively the "Fees").

11. Michigan, like most of the country, abides by the American Rule related to the payment of attorney's fees. Under the American Rule attorney fees are not recoverable from the losing party as "costs" unless a specific law expressly authorizes same. See *Haliw v City of Sterling Heights*, 471 Mich 700 (2005). See also *Dessart v. Burak*, 470 Mich 37,  (2004) noting that the term "costs" doesn't include attorney's fees unless the statute specifically defines "costs" as including attorney's fees.

12. The American Rule has also been firmly entrenched in Federal jurisprudence as well. Even our Supreme Court has been consistent that absent "explicit statutory authority" that the American Rule applies. See *Baker Botts LLP v ASARCO*, 135 S.Ct. 2158 (2015).

13. The Costs Ordinance omits specific references to any of the Fees.

14. The Costs Ordinance does not attempt to further define the words "abatement" or "demolition" in any way that could be construed to encompass the Fees.

15. By their very definition, the Fees are not a cost of abatement, nor a cost of demolition.

16. Notwithstanding, the City persists in not only assessing these Fees to homeowners but threatening – and often doing so – to place the amounts on the homeowner's tax bill as a lien on their property.

17. The City issues the Fees to homeowners without any hearing of any type related to these Fees or their reasonableness in violation of Michigan law. See *Smith v Khouri*, 481 Mich 519 (2009) and its progeny.

18. The City provides no pre-deprivation or post-deprivation due process to Plaintiff, or any other, to challenge the propriety or adequacy of the Fees.

19. There is likewise no mechanism for appeal or court review of these Fees as they are not a final administrative order appealable under the Michigan Constitution.

20. The Fees constitute a "tax" that has not been authorized by the City's voters in violation of Article 9, Section 31 of the Michigan Constitution of 1963 (the "Headlee Amendment").

21. The Fees impose upon the owners of these properties a disproportional financial burden of a governmental entity – enforcement of the City's ordinances – which benefits the community at large.

22. Michigan law defines a tax as "having a primary purpose of raising revenue, while fees are usually in exchange for a service rendered or a benefit conferred." *Westlake Transportation, Inc. v Pub. Service Comm.,* 255 Mich App 589 (2003). "Where revenue generated by a regulatory 'fee' exceeds the cost of regulation, the 'fee' is actually a tax in disguise." *Id.*

23. The Fees are not a regulatory fee authorized by ordinance but are an unlawful fee charged/levied for the sole purpose of raising revenue in order to finance the operation of the government as a whole.

24. The Fees in this case are not charged in exchange for any service rendered to Plaintiff or any benefit conferred on Plaintiff. Instead, the Fees are charged as a further punishment to Plaintiff – without any hearing on such Fees – for the City's mere enforcement of its ordinances.

25. For a "fee" charged by the municipality to pass constitutional muster it must be reasonably proportionate to the direct and indirect costs of providing the service for which the fee is charged. *Merrelli v St. Clair Shores*, 355 Mich 575 (1959).

26. The City charges a 10% administrative fee in addition to any other costs and fees charged to Plaintiff. This 10% administrative fee is charged on the total balance of the invoice, regardless of the time, effort, energy, or work the City put into its administration of the process.

27. This 10% administrative fee is also charged on top of the attorney's fees unlawfully charged to Plaintiff.

28. There is no rational relationship between the 10% administrative fee charged by the City where it is based solely on the amount of unlawful Fees under the Costs Ordinance and not on the costs of providing an alleged service.

29. The same lack of rational relationship is true where the City, without statutory or other lawful authorization, charges a 5% late fee on all invoices it issues under this process.

30. The City's Fees are demands for payment and the consequence of failure to pay is a lien in the form of an additional tax obligation to the homeowner, which if not paid would result in the foreclosure of the homeowner's property under the Michigan General Property Tax Act. Any payment of the Fees by any person is also involuntary for this reason. See §10-82 IPMC-111.8 (6):

> The owner or party in interest in whose name the property appears upon the last local tax assessment records shall be notified of the amount of such cost by first class mail at the address shown on the records. If he or she fails to pay the same within three days after mailing by the finance director of the notice of the amount thereof, the finance director shall add the same to the next city tax roll of the city and the same shall be collected in the same manner in all respects as provided by law for the collection of taxes by the city.

31. Moreover, the City's Fees are prohibited by MCL 141.91.

32. The doctrine of ultra vires further precludes a city from engaging in a course of conduct where it lacks the authority to do so by Constitution, Statute, or other law. The City has no lawful authority to charge the Fees.

33. All persons subject to the conduct of the City pay the charges involuntarily as the Defendant collects funds under the threat of lien for which the property would be subject to forfeiture for failure to pay.

34. H & J owns the property commonly known as 23155 Beechwood, Eastpointe, MI 48021 (the "Property"). H & J acquired the property on or about February 9, 2017.

35. Unbeknownst to H & J, the City had previously sent notice of commencement of a dangerous building hearing on the Property to the prior owner.

36. Unbeknownst to H & J, the City conducted a dangerous building hearing on the Property on or about February 21, 2017.

37. On July 12, 2017 the City issued H & J an invoice for the Fees. At no time was H & J charged with any costs of abating any nuisance or for demolishing any portion of the Property. H &J was, in fact, already in the process of complying with the City's codes and ordinances and working toward obtaining a certificate of compliance, which was issued a mere two months later on September 7, 2017.

38. H & J denied liability under the invoice and refused to pay same.

39. On or about December 1, 2017 the City placed a lien on H & J's Property in the form of a tax bill, charging H & J Fees of $1,060.85 plus a 5% penalty for a total of $1,113.89. The tax bill refers to the charge as an "abatement," but the invoice upon which it is based is solely for Fees.

40. If unpaid, this lien will be foreclosed and H & J will lose his property.

## I.    PARTIES

41. Plaintiff H & J SOLUTIONS, LLC is a Michigan Limited Liability Company whose registered office is located in the City of Taylor, County of Wayne, and State of Michigan.

42. H & J brings this class action on behalf of itself and all others who are similarly situated by virtue of having been charged unlawful Fees by the City of Eastpointe.

43. Defendant City of Eastpointe is a municipal corporation located within Macomb County in the State of Michigan.

## II.    JURISDICTION AND VENUE

44. Plaintiff incorporates the preceding paragraphs.

45. Jurisdiction by this Court over Plaintiff's constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

46. Supplemental jurisdiction over all state law claims is proper pursuant to 28

USC § 1367.

47. Venue is proper in this District pursuant to 28 USC § 1391 because the District is where the Defendants reside, where a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and where a substantial part of all properties subject to the action are located.

48. As additional Class Plaintiffs are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

### III.   CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF DUE PROCESS

49. Plaintiff incorporates the preceding paragraphs.

50. It is unconstitutional to deprive a person of their property without due process of law. U.S. Constitution Article 5; Michigan Constitution 1963 Article 1, Section 17.

51. The City's Costs Ordinance unlawfully deprives Plaintiff of its property without any opportunity to be heard or challenge the Fees in any way.

52. Michigan Law, the Constitution of the United States, and the Constitution of the State of Michigan, require a hearing before any party can be required to pay another's attorney's fees.

53. The City is unlawfully charging and collecting sums of money that are not

expressly authorized by their Costs Ordinance.

54. The City deprives Plaintiff, and those similarly situated, of any pre-deprivation or post-deprivation procedures related to the charging of the Fees. More specifically, the City issues its Fees to Plaintiff in the form of an unchallengeable invoice; there is no hearing or possibility of appeal of the Fees invoice, and if Plaintiff fails to pay the Fees they are placed as a lien on his Property thereby depriving Plaintiff of his money and potentially the property as a whole.

55. There is otherwise no lawful mechanism by which Plaintiff is afforded a hearing at any time to challenge the Fees.

56. The City of Eastpointe violates the rights of Plaintiff and others similarly situated by charging unlawful costs and by assessing the Fees to Plaintiff; as a result Plaintiff has incurred damages. Left unchecked, the City will continue to administer its Costs Ordinance in violation of the due process rights of Plaintiff and others similarly situated.

<u>**COUNT TWO**</u>
**VIOLATION OF THE EIGHTH AMENDMENT**

57. Plaintiff incorporates the preceding paragraphs.

58. The Eighth Amendment to the United States Constitution precludes excessive fines. The United States Supreme Court has applied the Eighth Amendment equally to civil and criminal proceedings.

59. The Eighth Amendment limits the Government's ability to extract payments as punishment for some offense. See generally *Austin v United States*, 509 US 602 (1993).

60. As set forth above the City has and continues to charge Plaintiff, and those similarly situated, fines in the form of Fees for the Hearings. These fines are not authorized by ordinance and are otherwise charged/levied unlawfully.

61. Any fine that is unlawful is, by its very nature, an "excessive fine" and should be afforded the protections of the Eighth Amendment.

62. Plaintiff, and those similarly situated have been damaged by paying such excessive fines and/or having such excessive fines placed as liens on their properties.

## COUNT THREE
## VIOLATION OF DUE PROCESS AND FOURTEENTH AMENDMENT
### (Deprivation of Appellate Rights)

63. Plaintiff incorporates the preceding paragraphs.

64. The Michigan Constitution provides a right of appeal from a final order of an administrative body.

65. The City's issuance of the Fees under their Costs Ordinance is not a final order as contemplated by the Michigan Constitution.

66. As a result, Plaintiff, and those similarly situated, have no right to appeal the issuance of the Fees to any court.

67. This deprivation is especially important where, as here, the failure to succumb to the City's demands for payment results in a lien being placed on the homeowner's property; failure to pay the lien results in the property being foreclosed by the taxing entity.

68. Plaintiff has been harmed as a result of the City's unconstitutional conduct.

## COUNT FOUR
## UNJUST ENRICHMENT

69. Plaintiff incorporates the preceding paragraphs.

70. Defendant in this matter has collected hundreds of thousands of dollars for Fees not authorized by the Constitution, Statue, or other law and has been unjustly enriched accordingly.

71. Defendant has benefitted from this unjust enrichment to the detriment of Plaintiff.

72. Plaintiff, individually and on behalf of those similarly situated seeks reimbursement for monies paid to the City under the unlawful threat of the Fees being owed.

## COUNT FIVE
## RESTITUTION/ASSUMPSIT

73. Plaintiff incorporates the preceding paragraphs.

74. Defendant has been unlawfully charging Fees to Plaintiff and those similarly situated without authorization under its own ordinances, state law, or the Constitution.

75. Defendant has been unlawfully collecting Fees that are in excess of any charge reasonably proportional to the costs of providing a service.

76. Pursuant to §10-82 of the Defendant's ordinances the City has the ability, and often does, place liens on properties like Plaintiff's for a failure to pay the demanded Fees.

77. Michigan law provides that an assumpsit action may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property, or threatens to take away or forfeit property rights under color of law where the act of the municipality constitutes a misuse of a badge of governmental authority for purposes unauthorized by law and thereby is no governmental function to be protected by governmental immunity.

78. Plaintiff seeks a court order for cessation of such illegal and inappropriate charges that were paid/levied and restitution back to such time as applicable under the relevant statute of limitations.

## <u>COUNT SIX</u>
## HEADLEE VIOLATION

79. Plaintiff incorporates the preceding paragraphs.

80. As set forth above, the 10% administrative fee charged by the City is in excess of that proportionate to the necessary costs of the services and do not represent actual or reasonable costs of administration. Quite to the contrary, the 10% administrative fee is merely an arbitrary additional charge in excess of all the other Fees levied by the City.

81. The 10% administrative fee does not serve a regulatory purpose but instead is intended to raise revenues for the City and is involuntarily paid (or levied to) by the Plaintiff and those similarly situated.

82. As set forth above the 5% late fee charged by the City is in excess of that proportionate to the necessary costs of the services and do not represent actual or reasonable costs. Quite to the contrary, the 5% late fee is merely there as an additional charge in excess of all the other Fees levied by the City.

83. The 5% late fee does not serve a regulatory purpose but instead is intended to raise revenues for the City and is involuntarily paid (or levied to) by the Plaintiff and those similarly situated.

84. The Attorney's fee charged by the City is not authorized by law and does not serve a regulatory purpose; instead it is intended to raise revenues for the City on the backs of Plaintiff and those similarly situated for the simple

enforcement of their own building codes. Such amounts are involuntarily paid (or levied to) by the Plaintiff and those similarly situated.

85. The aforesaid fees are a tax that was not approved by the voters of the Defendant (or otherwise authorized by law) and are therefore void and unconstitutional pursuant to Article 9, Section 31 of the Michigan Constitution of 1963 (the "Headlee Amendment").

86. In particular, the City may not disguise a tax as a fee under the Headlee Amendment, which provides:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon.

87. The Fees, either individually or collectively, are a disguised tax, intended to avoid the obligations of the Headlee Amendment, including the requirement that the Fees, as taxes, be approved by a majority of the electorate.

88. The Fees, either individually or collectively, have all the relevant indicia of a tax:

a. They are demanded under no lawful authorization and without the exchange of any service provided to or benefit received by the taxpayer;[1]

b. The amounts charged are disproportionate to the costs – as defined by the City's own ordinance – for the hearings that are conducted;

c. The Fees are designed to – and in fact does – generate revenues that exceed the City's actual costs of providing the alleged services conveyed;

d. The Plaintiff, and those similarly situated, benefit in no manner distinct from any other taxpayer or the general public; and

e. Payment of the Fees is not discretionary, but actually or effectively mandatory by virtue of the City's ability to place (and foreclose) a lien on the subject property.

89. As a direct and proximate result of the City's implementation of the Costs Ordinance and accompanying Fees unlawfully charged under it, Plaintiff, and those similarly situated, have been damaged.

## COUNT SEVEN
## VIOLATION OF RIGHT TO EQUAL PROTECTION

90. Plaintiff incorporates the preceding paragraphs.

---

[1] Quite to the contrary, the City's Fees are a punishment to the Plaintiff taxpayer the City is attempting to demolish or otherwise condemn Plaintiff's building – a clear act against the Plaintiff and not some service or benefit provided to it.

91. The Michigan and United States Constitutions guarantee equal protection of the law.

92. The purpose of these provisions is to protect against discrimination among similarly situated individuals thereby ensuring that all similarly situated people are treated alike.

93. Plaintiff and those similarly situated are owners of real property in the City.

94. Plaintiff pays taxes on his Property, just like all other real-property owners in the City.

95. Taxes paid by all property owners in the City are used by the City, at least in part, to pay for the enforcement of the City's own ordinances, including the payment of its own officers and the payment of its own legal counsel.

96. As set forth above, the City unlawfully charged/levied to Plaintiff for the Fees alleged to have been incurred by the City in the enforcement of its own ordinances.

97. Upon information and belief, the City does not seek reimbursement for attorney's fees, or any Fees charged for the process, from any other property owner in the City.

98. The City's practice of imposing the Fees only upon Plaintiff and those similarly situated is a constitutionally improper classification in two ways. First, there is nothing that distinguishes Plaintiff as a property owner and

taxpayer from any other property owner and taxpayer in the City. Second, charging only Plaintiff and those similarly situated with the Fees places Plaintiff in the position of financing the City's attorney's fees when other property owners are not asked to do the same.

99. There is no legitimate governmental purpose being served through the City unlawfully charging Plaintiff, and those similarly situated, for Fees that are not charged to all other real-property owners in the City.

## COUNT EIGHT
## DECLARATORY JUDGMENT INVALIDATING LIENS & INJUNCTIVE RELIEF

100.    Plaintiff incorporates the preceding paragraphs.

101.    An actual controversy exists between Plaintiff and the City regarding the City's unlawful Fees and liens.

102.    As set forth above, the City has the ability to place a lien on Plaintiff's Property for failing to pay the Fees. The lien is in the form of the Fees being placed on the tax rolls as an "Abatement."

103.    The City did place a lien on Plaintiff's Property in the form of it being added to its tax rolls, and it is believed that all other similarly situated people and entities who fail to succumb to the City's demands have the Fees placed on their tax rolls as a lien.

104.    As the liens are based on unlawful fees as further set forth in this Complaint above, such liens should be declared invalid and removed.

## IV.    CLASS ALLEGATIONS

105.    Plaintiff incorporates the preceding paragraphs.

106.    Plaintiff and putative class members have suffered and continue to suffer similar harm due to having their property taken by the City without minimum due process. After not receiving adequate notice or a meaningful opportunity to be heard, the Plaintiff and class members are then faced with multiplying levies for failure to pay improperly charged/levied Fees.

107.    <u>Class Definition.</u> Plaintiff seeks to certify the following class

A) All persons and entities who have been charged/levied Fees by the City without authorization under law from February 2012 through final judgment in this matter, or such longer period as may be allowed by law.

108.    <u>Numerosity</u>.  The proposed classes are so numerous that joinder of all members is impracticable.  While the exact number of class members is not now known, Plaintiff believes the class number is in excess of 250 members. These members may be readily identified from Defendant's own records.

109.    <u>Commonality.</u> There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

110.    Among the questions of law or fact common to the class are the

following:

a)  Did the City deprive Plaintiff of any pre-deprivation or post-deprivation due process rights to challenge the Fees charged by the City?

b)  Did the City unlawfully charge/assess Fees to Plaintiff and those similarly situated?

c)  Are the Fees charged by the City really taxes in disguise?

d)  Does the City's charging of the Fees violate the Headlee Amendment?

e)  Does the City's charging of the Fees violate equal protection?

f)  Does the City's charging of the Fees violate Michigan law?

111.  Typicality.  The harm suffered by Plaintiff is typical of the harm suffered by other class members differing only in amount.  Accordingly, the claims of Plaintiff are the same as those of the other class members. Resolution of these common questions will determine the liability of the Defendant to Plaintiff and the class members in general.  Thus, the claims properly form the basis for class treatment in this case.

112.  Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

113.  Adequacy of Representation.  The represented parties will fairly and

adequately assert and protect the interest of the class.  Plaintiff has already demonstrated its willingness to pursue this litigation on its own behalf, and have no known conflicts with the class members.

114.     Plaintiff's co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary is well versed in the facts and substantive law underlying the Plaintiff's claims and has previously been certified to represent a class in five other class actions lawsuits brought in this Court and against municipalities. Likewise, The Law Offices of Aaron D. Cox, PLLC is well versed in the facts and substantive law underlying the Plaintiff's claims having two attorneys with more than thirteen combined years of real estate and general litigation experience and who have litigated aspects of the IPMC and due process before the State Courts of Michigan and the Federal District Court for the Eastern District of Michigan and have also been certified to represent a class in two other class action lawsuits brought in this Court and against municipalities.

115.     This class action is maintainable under Federal Rule of Civil Procedure 23(b).

116.     The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

a)     The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

b)     The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

117.     The party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole.   Specifically, Defendant has and continues to deprive homeowners of their right to due process to challenge the Fees; Defendant also has and continues to unlawfully charge/assess the fees to property owners.

118.     The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy.

119.     The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

120.     In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

121.     It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

122.     Plaintiff is not aware of any members of the proposed class that have filed similar litigation nor is Plaintiff aware of any pending similar litigation in which the City is a Defendant.

123.     The class action is the appropriate method for the fair and efficient adjudication of the controversy.   The legal and factual bases for the Plaintiff's claims are the same as for the claims of all class members.   The only difference between individual claims is the severity of the harm and resulting damages.   Adjudicating this case on a class-wide basis will promote substantial judicial economy by eliminating the likelihood of

multiple cases (perhaps hundreds) turning on the same questions of law and fact.  The class action will also provide the Plaintiff with the only meaningful avenue for relief, due to the economy of spreading its litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims.  Further, the class action will save the Defendant the burden of defending multiple suits in multiple forums.

## VIII.  RELIEF REQUESTED

WHEREFORE, on behalf of itself and others similarly situated, H& J SOLUTIONS, LLC requests the following relief:

A.     That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiff to represent the class and certifying Plaintiff's counsel to represent the class;

B.     The declaratory relief as applicable and specified above;

C.     An award of damages, including all applicable interest, in an amount to be determined at trial;

D.     An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988, 42 USC §1983 or on other grounds;

E.      An award of an incentive fee to the named Plaintiffs for having the

courage to come forward and challenge the City's ordinances and the manner in

which they are administered; AND/OR

F.      Any other relief as necessary to redress the violation of Plaintiff's

rights secured by the Constitution and laws.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted by:

THE LAW OFFICES OF AARON D. COX,
PLLC
Co-Counsel for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

/s/ Aaron D. Cox, Esq.
By: Aaron D. Cox (P69346)
aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

/s/ Mark K. Wasvary
By: Mark K. Wasvary (P51575)
mark@wasvarylaw.com